# Commonwealth *v.* Kiefer, Appellant.

*Criminal law—Pure Food Act—Selling adulterated butter—Excess moisture—Standard of commerce—Evidence—Sufficiency.*

Upon the indictment of one charged under the Act of May 13, 1909, P. L. 520 (Pure Food Act), with selling adulterated butter, it was competent for the Commonwealth to show what proportion of moisture is found in the butter of commerce.

The evidence being that 16 per cent of moisture was recognized by manufacturers and dealers as the maximum amount to be found in butter, and that the butter sold by the defendant contained 31 per cent of moisture, it was not error to charge the jury that, if they found that 16 per cent was the accepted maximum standard, and that 31 per cent was the proportion found in the butter sold by the defendant that such product was adulterated within the prohibition of the act.

460, (1922).] Statement of Facts—Opinion of the Court.

Argued November 15, 1921. Appeal, No. 108, Oct. T., 1921, by defendant, from judgment of Q. S. Berks Co., March Sessions, 1920, No. 150, on verdict of guilty, in the case of Commonwealth of Pennsylvania v. I. L. Kiefer. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Indictment for selling adulterated butter. Before ,WAGNER, J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty upon which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were various rulings on evidence, the order refusing a new trial, and the judgment of the court.

*C. H. Ruhl,* for appellant.—The act is highly penal, and must be strictly construed: Com. v. Krickbaum, 199 Pa. 355; Com. v. Gouger, 21 Pa. Superior Ct. 217.

*A. M. Woodward,* and with him *H. Robert Mays,* District Attorney, and *Oliver M. Wolff,* Assistant District Attorney, for appellee.—The case called for expert opinion on the question of standards: Com. v. Baird, 66 Pa. Superior Ct. 275.

OPINION BY HENDERSON, J., March 3, 1922:

The defendant was convicted of selling adulterated butter. It was the product of a creamery operated by him and was sold in the open market. The indictment was drawn under the Act of May 13, 1909, the purpose of which legislation, as declared in the title, is the protection of the public health and the prevention of fraud and deception. The method adopted was the prohibition of the manufacture or sale, the offering for sale, or exposing for sale, or the having in possession with the in-

tent to sell, of adulterated, misbranded or deleterious foods. The second section defines the term food; the third section declares what foods shall be deemed adulterated. The latter section contains five subdivisions, with the first and second of which only we are concerned, as the first two counts were drawn under these clauses and were the counts submitted by the court for the consideration of the jury. It is unnecessary to speak of the importance of this legislation or of the commendable purpose of its enactment. This has been done in several cases and a repetition of the argument would be superfluous. The first clause of section 3 declares that food shall be deemed adulterated if any substance has been mixed or packed with it so as to reduce, or lower, or injuriously affect its quality, strength or purity. This is the charge preferred against the defendant in the first count of the indictment. The second clause declares that food shall be deemed adulterated if any substance has been substituted wholly or in part for the article and under this the second count was drawn. The allegation of the Commonwealth was that the butter, which was the subject of investigation, contained 31% of moisture, whereas 16% was the maximum amount recognized in the trade as normal, and evidence was introduced to show that the excess of moisture had been added to the butter in the form of water. Several witnesses supported the indictment with evidence that that quantity of water in the butter could only be accounted for on the assumption that it had been added. There was the evidence also of an expert chemist who tested a part of the butter sold and who gave it as his opinion that water had been added. This was the question of fact which the court submitted to the jury. The counsel for the defendant asked the court to charge that there could be no conviction in the case unless the jury found that the defendant added water to the butter after it was churned, and this request the court affirmed. The issue was made up by the testimony of the Commonwealth's witnesses, by

the denial of the defendant that he had added water, and the testimony of witnesses called by him who stated that a larger quantity than 16% of moisture had been found by them in butter, one of them placing the quantity at 21% in a sample which he had handled. There can be no doubt of the application of the statute to the defendant's case if he added water to the butter which he offered in the market. No witness was called who testified that butter made under ordinary process would exhibit a content of 31% of moisture. The defendant did not so assert. He said that he did not add water. Either of the counts in the indictment on which the defendant was convicted would be sustained by the Commonwealth's evidence, for the addition of water would lower the quality of the butter and its use would be a substitution in part for butter. The verdict of the jury was a finding that water had been added as charged in the indictment. The learned counsel of the appellant states the question to be: "May a citizen be convicted of a crime, not such per se, but by alleged statutory prohibition which fixes no standard or definition of the act prohibited?" On this understanding of the case, the argument proceeds with a discussion of the propriety of the action of the court in admitting expert testimony to show that 16% of moisture was recognized in commerce as the maximum quantity found in butter sold in the markets and was recognized as the standard throughout the United States. In view of the direct evidence tending to show the addition of water, the proposition presented is not that which we are required to consider, but if we assume that the question thus presented is that on which the case turns, we are not convinced of the error of the court. The statute does not define the elements of food. It would have been impossible to include in a statute a description and definition of the countless articles entering into the diet of the people of the Commonwealth. The act assumes the existence of a great variety of food substances and operates on those manu-

facturing and selling them. It will be conceded that the statute would apply to the case of sand added to sugar or water to milk without a statutory declaration of the normal constituents of those foods, and in like manner the application may be made to butter and flour and the whole catalog of articles of food. When the inquiry is made whether there has been adulteration under the act, it may become necessary to ascertain what the thing is which is adulterated. The law takes notice of the common understanding as to its nature, but it may be expedient to resort to expert evidence to ascertain the composition of the article in question. When we speak of butter, the popular understanding is that it is a product of the milk of cows. When a question arises as to the mode of manufacture and the constituents of which it is composed, the evidence of men having experience in that subject may be necessary, and when we come to the inquiry what is butter; what should it be as an article of food, we must appeal to those who are familiar with its composition and know what it is understood to be by those who are dealers in the commodity. The constituents of butter are given in the cyclopedias and are known by experts, but an average jury could not be expected to know what proportions of fat, casein, sugar and moisture enter into its composition as it is produced by dairymen and sold in the markets. It was competent therefore for the Commonwealth to show what proportion of moisture is found in the butter of commerce, to enable the jury to ascertain whether the defendant's butter contained moisture much in excess of that which is normally present in the product. In this view of the case the court was not in error in charging the jury that if the butter contained more than 16% of moisture and they believed the evidence of witnesses who stated that that was recognized by manufacturers and dealers as the maximum amount to be found in butter, the article sold by defendant would fall under the prohibition of the act of assembly. But as before remarked, we do not

regard this instruction as bearing on the real issue in the case. If there was added water, the defendant violated the statute, for his product was thereby lowered in quality both by mixture and substitution. The butter was sold at 80 cents per pound. It is obvious that the purchaser, nearly one-third of whose butter consisted of water, was deceived with respect to the thing he bought and that it was injuriously affected in quality and purity. As the evidence was sufficient to support a conviction, valid reasons have not been presented for setting aside the verdict.

The judgment is affirmed and the record remitted to the court below to the end that the sentence be carried into effect.